UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                    )<br>)<br>RICHARD W. GOULD                  )<br>_____) | CR. NO. 04-10248-RCL |

PRE-HEARING MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT RICHARD W. GOULD'S
MOTION TO SUPPRESS ORAL STATEMENTS

Defendant Richard W. Gould (hereinafter "Gould"), hereby respectfully submits, by and through undersigned counsel, this Memorandum of Law in support of his Motion to Suppress.

## FACTUAL BACKGROUND[1]

On information and belief, on June 30, 2004, at approximately 11:00 a.m., police officers from the Peabody Police Department and several agents of the DEA/FDA Drug Task Force were waiting for Gould to arrive in the area of 5 Trask Court, in Beverly, MA. When Gould arrived at that location, these undercover police, without announcing their intentions or identifying themselves, began to surround Gould, causing Gould to flee the scene on foot. Subsequently, these undercover officers chased, caught and handcuffed him.

Immediately after his arrest, Gould asserted his right to speak to a lawyer. Specifically, in response to questions regarding pills, Gould said unequivocally "I want to

---

[1]Defendant notes that any "facts" referenced in his Motion to Suppress and this Memorandum of Law in support thereof are admitted as true solely for the purposes of his Motion and not otherwise.

talk to a lawyer." See Affidavit of Richard W. Gould filed herewith, ¶ 5. Although Gould cannot recall whether or not he was advised of his *Miranda* rights at the scene of his arrest, he clearly recalls that he requested to speak to a lawyer and that he did not make any incriminating statements. Id. at ¶ 7. Moreover, when Gould was specifically asked to sign a *Miranda* waiver form, he refused to do so. Id. at ¶ 9. However, when Gould was asked to sign a DEA Form 88 Consent to Search for his apartment in South Boston, he agreed to sign the form. Id. at ¶ 10.

Nevertheless, according to a report prepared by Special Agent David M. DiTullio (hereinafter "DiTullio"), Gould allegedly made statements regarding his involvement in the distribution of Oxycontin, including with limitation, his Source of Supply. Specifically, DiTullio claims that Gould admitted to him that "he was delivering five-hundred (500) Oxycontin tablets" to co-defendant Christopher Alviti at the scene of his arrest. DiTullio further claims in his report that after Gould was transported to DEA Headquarters for processing Gould "indicated that he would talk about the attempted five-hundred (500) Oxycontin delivery to ALVITI and also about his Source of Supply (SOS) for the Oxycontin tablets." DiTullio further writes in his report:

> In sum and substance, GOULD stated that his Source of Supply (SOS) for Oxycontin was located in New Jersey. GOULD stated that he could not provide the name of his Source of Supply (SOS) because of the close relationship he had with the individual who introduced him to his SOS. GOULD stated that he had been receiving approximately 500-1000 pills "every few weeks" from his SOS, who would send a delivery person to the Massachusetts area to meet with GOULD. The unidentified courier would deliver the Oxycontin to GOULD, pick up money from GOULD and subsequently deliver it to New Jersey. GOULD also stated that he would occasionally travel to Connecticut to meet with his Source of Supply (SOS) to pick up quantities of Oxycontin.
>
> GOULD also stated that he would utilize pre-paid cellular telephones to conduct his Oxycontin distribution with his customers. GOULD indicated

that he had been purchasing Oxycontin tablets from his Source of Supply (SOS) for approximately six (6) months.

In short, according to DiTullio's report, Gould gave incriminating statements sufficient to convict him of the charges alleged against him. Gould denies making these statements. Gould Affidavit, ¶ 8. Moreover, at no time did Gould ever sign a waiver form and during discovery the government has provided no video or tape recording of Gould's alleged incriminating statements.

> I. WHERE MR. GOULD ASSERTED HIS RIGHT TO COUNSEL AND WAS NOT PROVIDED COUNSEL, ANY ALLEGED STATEMENTS ATTRIBUTABLE TO HIM AFTER HE ASSERTED HIS RIGHT TO COUNSEL MUST BE SUPPRESSED.

A person is "denied the basic protections of [the Sixth Amendment's] guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of counsel." United States v. Bender, 221 F.3d 265, 268 (1st Cir. 2000) quoting Massiah v. United States, 377 U.S. 201, 206, 84 S.CT. 1199, 12 L.Ed.2d 246 (1964). As Justice Black noted in *Gideon v. Wainwright*, "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court ... cannot be assured a fair trial unless counsel is provided for him." Id. citing Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.CT. 792, 9 L.Ed.2d 799 (1963). And, as noted in *Maine v. Moulton*, "what use is a defendant's right to effective counsel at every stage of a criminal case if, while he is held awaiting trial, he can be questioned in the absence of counsel until he confesses?" Id. citing Maine v. Moulton, 474 U.S. 159, 171, 106 S.CT. 477, 88 L.Ed.2d 481 (1985).

In <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.CT. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that certain warnings must be given before a suspect's statement, made during custodial interrogation, can be admitted in evidence. See <u>Dickerson v. United States</u>, 530 U.S. 428, 431-32, 120 S.CT. 2326, 147 L.Ed.2d 405 (2000). *Miranda* conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. <u>Missouri v. Seibert</u>, ___ U.S. ___, ___, 24 S.Ct. 2601, 2608, 159 L.Ed.2d 642 (2004). Indeed, to reduce the risk of a coerced confession and to implement the Self-Incrimination Clause of the Fifth Amendment and the Assistance of Counsel Clause of the Sixth Amendment, the *Miranda* Court concluded that an accused must be "adequately and effectively apprised of his rights" and the "exercise of those rights must be fully honored." <u>Miranda</u> supra 384 U.S. at 467. [2]

Under <u>Edwards v. Arizona</u>, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and its progeny, law enforcement officers must cease custodial interrogation of a suspect once the suspect has expressed his desire to consult with an attorney, unless the suspect himself initiates further communication with law enforcement officers. <u>Id</u>. at 484-5. Indeed, the "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to

---

[2] Of course, the burden of showing admissibility rests on the prosecution. <u>Brown v. Illinois</u>, 422 U.S. 590, 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver, <u>Colorado v. Connelly</u>, 479 U.S. 157, 169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and the voluntariness of the confession, <u>Lego v. Twomey</u>, 404 U.S. 477, 489, 92 S.CT. 619, 30 L.Ed.2d 618 (1972).

circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." See Bender supra at 268 citing Moulton 474 U.S. at 176.

In Davis v. United States, 512 U.S. 452, 114 S.CT. 2350, 129 L.Ed.2d 362 (1994), the Supreme Court discussed what is required for a defendant to invoke his *Miranda*-based right to counsel. Under *Davis*, in order for the police to be required to cease questioning, "the suspect must unambiguously request counsel" meaning that the individual "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. at 459.

Thus, *Miranda* requires that the police warn a suspect in custody of his rights to counsel and to remain silent. If the police have failed to give the warnings and obtain a waiver of rights, the statements are excluded, even if otherwise voluntary. However, where the suspect asserts that he wants to consult with counsel, questioning must cease until counsel is provided. See Edwards supra at 484-85.

In the present case, Gould asserted his right to speak to a lawyer immediately after his arrest. Indeed, Gould repeatedly asserted his right to speak to counsel throughout the officers questioning of him at the scene of his arrest and at DEA headquarters. At no time did Gould knowingly, voluntarily, and intelligently waive his constitutional right to speak with counsel.

Finally, at no time did Gould initiate any conversation with the officers interrogating him other than to ask to speak to a lawyer. Accordingly, any oral statements attributable to Gould after he asserted his right to counsel and before counsel was provided should be suppressed.

II.  WHERE MR. GOULD ASSERTED HIS RIGHT TO REMAIN SILENT AND THE GOVERNMENT DID NOT SCRUPULOUSLY HONOR HIS RIGHT TO REMAIN SILENT, ANY ALLEGED STATEMENTS ATTRIBUTABLE TO HIM AFTER HE ASSERTED HIS RIGHT TO REMAIN SILENT MUST BE SUPPRESSED.

In *Michigan v. Mosley*, 423 U.S. 96, 96 S.CT. 321, 46 L.Ed.2d 313 (1975), the Supreme Court addressed an issue left unresolved by the *Miranda* Court, namely, once a suspect in custody invokes his right to remain silent, under what circumstances may the police resume questioning for the purpose of obtaining statements admissible against the defendant at trial. See United States v. Barone, 968 F.2d 1378, 1382 (1st Cir. 1992). Reasoning that the "critical safeguard" is a person's 'right to cut off questioning", the *Mosley* Court concluded that the admissibility of statements obtained after a person in custody has decided to remain silent depends on whether the government "scrupulously honored" the suspect's right to cut off questioning. Id. at 1383.

Based on the assumption that "repeated rounds of questioning" in the face of a decision to remain silent nearly always will undermine a suspect's will, the *Mosley* Court presumed that a Fifth Amendment violation will occur unless law enforcement officials follow specific procedures. Id. Thus, under *Mosley*, courts must consider multiple factors including, *inter alia*, the time that elapsed between interrogations, whether fresh warnings were provided, the scope of the second interrogation, and the intensity with which officers pursued questioning after the suspect asserted his right to remain silent. Indeed, while the suspect's state of mind is central to the voluntariness finding, the *Mosley* test focuses on what the police did, and when, after the suspect exercised his right to remain silent. Under *Miranda* and *Mosley*, a court is not required to determine whether there has been a voluntary waiver unless and until the government has carried its

burden of showing that it "scrupulously honored" a suspect's "right to cut off questioning." Id. at 1384.

In the present case, even if the Court concludes that Gould made the statements that DiTullio attributes to him, it is clear that DiTullio did not "scrupulously honor" Gould's right to cut off questioning. Indeed, if DiTullio and others continued to interrogate Gould as Gould continued to ask for counsel, to assert his right to remain silent and to refuse to sign a waiver, this Court can presume that a Fifth Amendment violation occurred.

> III. WHERE MR. GOULD DID NOT VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY WAIVE HIS RIGHTS TO COUNSEL OR TO REMAIN SILENT, ANY ALLEGED STATEMENTS ATTRIBUTABLE TO HIM AFTER HE ASSERTED THESE CONSTITUTIONAL RIGHTS MUST BE SUPPRESSED.

To determine whether Gould made a voluntary, knowing and intelligent waiver of his rights to counsel and to remain silent, the Court must consider two questions. First, was Gould's relinquishment of these rights voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation. Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (9186). Second, was the waiver made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon it. Id.; see also United States v. Melanson, 691 F.2d 579, 588 (1st Cir.), cert. denied, 454 U.S. 856, 102 S.Ct. 305, 70 L.Ed.2d 151 (1981). "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." Moran, 475 U.S. at 421; see also United States v. Browne, 891 F.2d 389, 393 (1st Cir. 1989).

In the present case, even if the Court concludes that Gould was informed of his Miranda rights when he was arrested or at DEA Headquarters, the government cannot sustain its burden of showing that Gould's waiver was a free and deliberate choice with full awareness of the nature of the rights being abandoned and the consequences thereof where Gould asserts he never waived his rights and specifically refused to sign a waiver to that effect. Viewing the totality of the circumstances including, without limitation, the absence of a written waiver, the length of the interrogation, the absence of a tape recording or video recording of the allegedly incriminating statements and the inherent inconsistency in the fact that Gould signed a consent form to search his apartment but did not sign a waiver of his Miranda rights, it is clear that the government cannot sustain its burden in this case. Accordingly, where the government cannot show that Gould made a voluntary, knowing and intelligent waiver of his right to counsel or his right to remain silent, any statements attributed to Gould after his arrest must be suppressed.

## REQUEST FOR EVIDENTIARY HEARING

Defendant requests an evidentiary hearing on this motion.

## REQUEST FOR POST-HEARING BRIEFING

Defendant further requests an opportunity to submit a post-hearing brief on the above issues and any other issues raised during the evidentiary hearing.

                                                     Respectfully submitted
                                                     By Defendant,
                                                     RICHARD W. GOULD
                                                     By his attorney,

                                                     /S/
                                                 Scott P. Lopez (BBO# 549556)
                                                 Law Office of Scott P. Lopez
                                                 24 School Street, 8th Floor
                                                 Boston, MA  02108
Dated:  June 7, 2005                         (617) 742-5700

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that I have conferred with counsel for the government, Assistant U.S. Attorney David G. Tobin, by telephone today, June 7, 2005, in a good faith attempt to resolve or narrow this issue in this motion.

                                                      /S/
                                                  Scott P. Lopez

## CERTIFICATE OF SERVICE

I, Scott P. Lopez, hereby certify that on the 7th day of June, 2005, I served the within MOTION TO SUPPRESS by electronic and regular mail on the following counsel of record at the following address:

                                          David G. Tobin
                                Assistant United States Attorney
                                    United States Attorney
                                    District of Massachusetts
                               One Courthouse Way, Suite 9200
                                      Boston, MA  02210
                                        617-748-3392
                                    David.Tobin@usdoj.gov

                                                   /S/
                                                 Scott P. Lopez